PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
____LODGED
____RECEIVED

**December 1, 2006**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>AUSTIN MICHAEL HAYS,<br><br>     Debtor.<br><br>CHANTELL MONROE,<br><br>     Plaintiff,<br><br> v.<br><br>AUSTIN MICHAEL HAYS,<br><br>     Defendant. | Case No. 05-53631<br><br>Adversary No. 06-4083<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

Trial was held in this matter on November 8, 2006. Chantell Monroe (Plaintiff), in accordance with her complaint, seeks to have a marital debt owed to her by the Defendant Austin Michael Hays (Debtor) declared non-dischargeable under 11 U.S.C. § 523(a)(15). Based on the evidence and arguments presented at trial, the Court's findings of fact and conclusions of law are as follows:

MEMORANDUM DECISION - 1

# FINDINGS OF FACT

The Debtor and the Plaintiff were married in Salem, Oregon, on May 1, 1999. The Plaintiff filed a petition for marriage dissolution in Clark County Superior Court, State of Washington, and the parties entered into a Separation Agreement on September 30, 2002. Pursuant to the terms of the Separation Agreement, the parties stipulated that the debt owed on a Fleet credit card (Fleet) was a community debt with a balance due of $10,600. They further agreed that they would each pay $5,300 in satisfaction of their respective portions of the obligation. The Plaintiff and the Debtor were divorced on December 31, 2002. At that time, the Clark County Superior Court entered a Decree of Dissolution that incorporated the Separation Agreement. There were no children of the marriage. The Debtor does not dispute that the Fleet obligation was a marital debt, or that the manner of payment was resolved in the course of the parties' dissolution proceedings.

The Debtor and the Plaintiff sold their jointly owned residence in February or March, 2003. Both parties received net proceeds. In order to carry out the terms of the Separation Agreement, the Plaintiff paid to the Debtor her portion of the amount due on the Fleet debt, $5,300. Instead of forwarding the payment to Fleet, the Debtor cashed the check and used the proceeds for his own purpose. The Debtor did not pay anything on the Fleet obligation from his portion of the sale proceeds.

The Debtor filed a Chapter 7 bankruptcy on October 15, 2005. Schedule F of his bankruptcy petition included the Fleet debt, that was subsequently assigned to Bank of America, and indicated an estimated balance due of $13,162.18. The Plaintiff was listed as a co-debtor on this account on Schedule H. On February 27, 2006, the Plaintiff filed a timely Complaint to Determine Non-Dischargeability of Marital Dissolution Debt 11 U.S.C.

§ 523(a)(15), seeking judgment for the amount paid to Fleet. Post-bankruptcy the Debtor sold a van and Chevrolet Impala for a total of $2,000, yet again failed to pay any of these proceeds toward the Fleet debt. On May 25, 2006, since the Plaintiff remained liable on the increasing Fleet debt, and because the Debtor had made only minimum payments, she paid Fleet the sum of $11,095.56 to compromise the full amount then due. The Plaintiff testified that payment was made to Fleet in order to protect her credit.

The Debtor asserts that he cannot afford to pay this obligation, and that even if he could, the Plaintiff is better able to pay it pursuant to 11 U.S.C. § 523(a)(15)(B). The Debtor is a plumber and earned approximately $49,500 in 2005. He is paid $30 per hour and works 40 hours per week, plus overtime. He currently resides with his girlfriend in a residence they jointly purchased in September, 2006, for a purchase price of approximately $252,000. After the purchase of this home, the Debtor's monthly rent went from $850, to his making payments on two mortgages in the total amount of approximately $2,019 per month. It is of note that the Debtor and his girlfriend also make monthly payments of $482 per month on three motorcycles, the last purchased in July, 2006. The couple's cell phone and Comcast bills total almost $300 per month. The Debtor currently makes payments to the Internal Revenue Service of $100 per month on a debt of $866, and on a car of $300 per month with approximately $2,500 still owed. The couple is expecting a baby in 2007, and have indicated that their expenses will significantly increase.

**CONCLUSIONS OF LAW**

According to 11 U.S.C. § 523(a)(15), debts arising from a divorce decree that are not considered in the nature of maintenance or support under 11 U.S.C. § 523(a)(5) are non-dischargeable unless the debtor can establish either that (1) the debtor does not have the

ability to pay them from discretionary income, or (2) discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the other party. Graves v. Myrvang (In re Myrvang), 232 F.3d 1116, 1119 n.2 (9th Cir. 2000); Samayoa v. Jodoin (In re Jodoin), 209 B.R. 132, 141 (9th Cir. BAP 1997). The plaintiff has the initial burden of proof to establish that the debts at issue were incurred by the debtor/defendant in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record. In re Jodoin, 209 B.R. at 140. The burden then shifts to the debtor, so that it is the debtor and not the creditor who has the burden of persuading the bankruptcy court that a non-dischargeable debt under § 523(a)(15) nonetheless qualifies for discharge. In re Myrvang, 232 F.3d at 1121. In applying these tests, the court is to review the financial information of the parties at the time of trial, not at the time of the filing of the petition. In re Jodoin, 209 B.R. at 142.

Under 11 U.S.C. § 523(a)(15)(A), the court must examine the debtor's ability to pay. The majority of courts have adopted the disposable income test of 11 U.S.C. § 1325(b)(2) to determine a debtor's ability to pay. In re Jodoin, 209 B.R. at 142; Greenwalt v. Greenwalt (In re Greenwalt), 200 B.R. 909, 913 (Bankr. W.D. Wash. 1996). The court does not need to accept the debtor's assessment of what expenses are reasonably necessary expenses. In re Greenwalt, 200 B.R. at 913. If the debtor does not have the ability to pay, the debt will be discharged; if the debtor does have the ability to pay, the court must then determine whether the benefit of granting the debtor a discharge would outweigh the detriment that the discharge of the debt would cause the nondebtor spouse. 11 U.S.C. § 523(a)(15)(B).

In this case, the parties admit that the Plaintiff has met her initial burden of establishing that the debt at issue was incurred by the Debtor in the course of the parties' dissolution

proceedings. Thus, the burden shifts to the Debtor to first present evidence that he does not have the ability to pay the debt owed to the Plaintiff.

The Debtor is currently employed and earns almost $50,000 per year. The Debtor admits he was obligated to originally pay $5,300 on the Fleet debt. After agreeing to pay his portion of this marital debt, it is undisputed that he cashed the check given him from the Plaintiff for making her half of the Fleet payment and kept the proceeds for his own use. Further, he received proceeds from a post-dissolution sale of their jointly owned residence, and failed to pay any of it toward the Fleet debt. The Debtor sold two vehicles for $2,000 post-dissolution and post-bankruptcy, yet again failed to pay any amount toward the Fleet debt. After the filing of the current adversary proceeding contesting the dischargeability of the debt admittedly owed to the Plaintiff, the Debtor chose to purchase a home for $252,000, thereby increasing his monthly debt by $1,169, and purchased a third motorcycle, increasing his monthly debt by $180.

The Debtor makes, along with his girlfriend, payments totaling almost $300 each month for cable and cell phone use. Although he also pays $300 per month on a car and $100 per month to the Internal Revenue Service, these debts should both be paid within a year. In viewing these expenses, the Court concludes that the cell phone and cable are not reasonable, and that a portion of these funds could be utilized for payment on the debt owed the Plaintiff. The Court also concludes that the payments currently made to the Internal Revenue Service and on the car loan, once paid, can be utilized to pay the debt owed the Plaintiff. Accordingly, by reducing the cell phone and cable expenses, and after the debts to the Internal Revenue Service and on the car loan are paid, the Debtor will have sufficient disposable income to pay the Plaintiff over time.

MEMORANDUM DECISION - 5

As the Debtor has the ability to pay this debt, the Court must then determine under 11 U.S.C. § 523(a)(15)(B) whether the benefit to the Debtor of discharging the debt outweighs the detriment discharging the debt would have on the Plaintiff. The burden is again on the Debtor of persuading the Court that this otherwise non-dischargeable debt qualifies for a discharge. In re Myrvang, 232 F.3d at 1121. The Court concludes that the balance of the equities favors the Plaintiff.

The Plaintiff did not file bankruptcy, is current in her obligations, is employed and has equity in her home. The Debtor is also employed, has discharged his unsecured debt and knowingly taken on additional secured debt and obligations. The Court has concluded previously that by restructuring financial decisions knowingly made, not only after the filing of this bankruptcy, but the filing of the current adversary proceeding, the Debtor could pay his future obligations.

The Court is also aware that the Debtor will have future additional expenses on the birth of the couple's child. This case, however, is unusual because of the Debtor's pre-bankruptcy conduct in knowingly keeping and using money given to him by the Plaintiff for payment of the Fleet debt, and his post-bankruptcy conduct in deciding to have a child, purchase a residence and a third motorcycle, all after the filing of this non-dischargeability proceeding. This conduct has resulted in current increased monthly expenses of approximately $1,350, as well as future expense increases on the birth of the child.

The central purpose of bankruptcy is to provide the honest but unfortunate debtor a fresh start. See Grogan v. Garner, 498 U.S. 279, 286 (1991). This Debtor's conduct, particularly post-bankruptcy, is not concluded to have been in good faith and clearly has adversely affected the repayment of the debt now owed to the Plaintiff. The Debtor should not

MEMORANDUM DECISION - 6

be rewarded by a finding that the debt owed to the Plaintiff is dischargeable. A finding that the debt is dischargeable would reward one who has knowingly taken on debt and obligations, even after the filing of a bankruptcy, and would punish the Plaintiff who has been financially prudent in conducting her financial affairs. In summary, the Plaintiff should not have to bear the burden caused by unwise financial decisions knowingly made by the Debtor, both before and after, the filing of his bankruptcy. Discharging the debt under these circumstances would result in detrimental consequences to the Plaintiff that outweigh the benefit to the Debtor.

The Court concludes that the debt owed by the Debtor to the Plaintiff is non-dischargeable.

DATED: December 1, 2006

*Paul B. Snyder*
_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 7